**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:** | Chapter 7 |
| **CITY LINE BEHAVIORAL HEALTHCARE, LLC,** | Case No. 19-12493-MDC |
| Debtor. | |
| **In re:** | Chapter 7 |
| **LIFE OF PURPOSE PENNSYLVANIA, LLC,** | Case No. 19-12495- MDC |
| Debtor. | |
| **In re:** | Chapter 7 |
| **MCI REAL ESTATE HOLDINGS, LLC,** | Case No. 19-12496- MDC |
| Debtor. | |

**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT BY AND BETWEEN CHAPTER 7 TRUSTEE AND OXFORD FINANCIAL, LLC, AS AGENT**

Gary F. Seitz, Esquire, the duly appointed and qualified trustee ("Trustee") in this case, through his undersigned counsel, and Oxford Financial LLC, in its capacity as Agent for the below-defined Lenders ("Agent"), through its undersigned counsel, hereby move (the "Motion") the court for an order pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 approving the Settlement Agreement by and between the Trustee and Agent, in the form attached hereto as Exhibit A (the "Agreement"). In support of the Motion, the Trustee states as follows:

JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.[1]

## BACKGROUND

4. On April 17, 2019 (the "Petition Date"), the Trustee was appointed chapter 7 trustee for all three cases (together with any superseding chapter 11 or chapter 7 cases, collectively, "Cases") by the Office of the United States Trustee.

5. Prior to the Petition Date, the Lenders provided senior secured loans to the Debtors as follows:

  a. Credit, Guaranty and Security Agreement dated as of December 11, 2017 (the "Credit Agreement"), by and among LBH Holdings, LLC ("Parent"), as a Guarantor, LBH Holdco Corp. ("LBH Corporation"), City Line Behavioral Healthcare, LLC (f/k/a Liberation Behavioral Health, LLC) ("CLBH"), Life of Purpose-Pennsylvania, LLC (f/k/a Liberation Way, LLC) ("LPP"), MCI Real Estate Holdings LLC ("MCI"), 1146 Stump Road, LLC ("1146"), 155 Pleasant Valley Road LLC ("155"), 650 Church Road, LLC ("650"), Life of Purpose LLC ("LOP"), and Life in Progress LLC ("LIP"'; and together with LBH Corporation, CLBH, LPP, MCI, 1146, 155, 650 and LOP, the "Borrowers"), the financial institutions party thereto from time to time as lenders (collectively, the "Lenders"), and Agent; and

  b. Revolving Loan Promissory Note for $4,000,000 dated December 11, 2017, Term Loan Promissory Note for $11,000,000 dated December 11, 2017, Term Loan Promissory Note for $13,000,000 dated December 11, 2017, and Term Loan Promissory Note for $5,600,000 dated December 11, 2017; and

---

[1] Pursuant to the Certificate of Service filed contemporaneously herewith, Notice of this Motion will be served on all parties listed on the Court's Mailing Matrix, attached to the Certificate of Service as Exhibit A.

    c. Various UCC financing statements, including those filed with the Secretary of State for the State of Delaware on December 6, 2017, September 28, 2018 (name change), March 22, 2019 (name change), and March 25, 2019 (name change). The Credit Agreement, such notes and UCC financing statements, and all of the other "Loan Documents" (as defined in the Credit Agreement), as amended or otherwise modified from time to time, are herein collectively referred to as the "Prepetition Documents". All of the indebtedness and other obligations of Debtors under the Prepetition Documents as of the Petition Date, including principal, interest (including default rate interest), fees, and other "Obligations" (as defined in the Credit Agreement), plus all amounts allowable under Code § 506(b), are referred to herein, collectively, as the "Prepetition Debt".

6. The Prepetition Debt is secured by, *inter alia*, First Priority Liens[2] (collectively, the "Prepetition Liens") on substantially all assets of the Debtors, including all of the "Collateral" (as defined in the Credit Agreement), existing as of the Petition Date, and all products and proceeds thereof (collectively, the "Prepetition Collateral"). The Prepetition Liens are perfected by, *inter alia*, various UCC financing statements filed with the Delaware Secretary of State on December 6, 2017, September 28, 2018 (name change), March 22, 2019 (name change), and March 25, 2019 (name change).

7. The Trustee's investigation of the Debtors' financial circumstances suggests that the Prepetition Debt is secured by the Prepetition Liens on the Prepetition Collateral, and that the Prepetition Liens are First Priority Liens.

8. After extensive investigation, the Trustee acknowledges and agrees that:

---

[2] "First Priority Lien" means a continuing lien and security interest that is first priority, properly perfected, valid, and enforceable, which is not subject to any claims, defenses, or setoffs, and that is not otherwise avoidable under any provision of the Code.

    a. the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens, and the prepetition financing relationship among Debtors, Agent, and Lenders;

    b. as of the Petition Date, each Debtor is liable and obligated for payment of the Prepetition Debt, and the Prepetition Debt is an allowed claim in each Case in an amount not less than $28,957,794.02, exclusive of any accrued and accruing amounts allowable under Code § 506(b);

    c. the Prepetition Debt constitutes the legal, valid and binding obligation of each Debtor, enforceable in accordance with the terms of the Prepetition Documents;

    d. the Prepetition Liens, among other things, secure the payment and performance of all of the Prepetition Debt; and

    e. the Prepetition Liens are First Priority Liens, subject only to Permitted Liens[3].

9. The Trustee is uniquely situated to efficiently administer the assets of the Debtors' bankruptcy estates, especially when various creditors are competing over the priority in any proceeds. An immediate need exists for the Trustee to use "cash collateral" (as defined in Code § 363(a)) constituting proceeds of Prepetition Collateral ("Cash Collateral") in order to enable the Trustee to conduct an orderly wind-down and liquidation of Debtors' business and assets.

10. To prevent immediate and irreparable harm to Debtors' estates, the Trustee requires the use of Cash Collateral to pay administrative expenses, subject to the terms hereof.

11. The Trustee hereby represents that under the circumstances of the Cases, the terms and conditions of the Agreement are a fair and reasonable response to the Trustee's request for Agent's and Lenders' consent to the use of Cash Collateral, and the court approval of the Agreement is in the best interests of each Debtors' estates and their creditors.

---

[3] "Permitted Liens" means (1) liens in favor of third parties on the Prepetition Collateral, if any, that, as of the Petition Date, (A) have priority under applicable law over the Prepetition Liens, (B) are not subordinated by agreement or applicable law, and (C) are non-avoidable, valid, properly perfected, and enforceable as of the Petition Date; and (2) the Carveout.

12. The Trustee has requested, and the Agent for the Lenders has agreed, to allow the Cash Collateral resulting from the Trustee's liquidation of Prepetition Collateral to be deposited into a deposit account maintained by the Trustee and used for liquidation operations, subject to the terms and conditions of the Agreement.

13. In furtherance of the amicable administration of these Cases for the benefit of all creditors—and as a result of extensive negotiations—the Parties have agreed to the terms and conditions of the Agreement, which makes up to, but not more than, $50,000 of Carveout (as defined below) funds available for a distribution to allowed chapter 7 unsecured claims in these Cases and an amicable procedure for the efficient liquidation of the assets and conclusion of this case. After review of the assets of these estates and the status of the Prepetition Liens, the Trustee believes that a settlement based upon the terms set forth herein is in the best interests of the Debtors' estates and all the creditors.

14. The Trustee and Agent have memorialized the foregoing agreement pursuant to the Agreement annexed hereto as <u>Exhibit A</u>.

15. Pursuant to the Agreement, the parties agree, *inter alia*, as follows:

   a. <u>Authorization to Use Cash Collateral</u>. The Trustee is authorized to use Cash Collateral until the Termination Date solely in accordance with the terms of the Agreement.

   b. <u>Procedure for Use of Cash Collateral</u>.

      i. <u>Delivery of Cash Collateral to Agent</u>. Upon entry of an Order approving the Agreement, the Trustee is authorized to, and agrees to, remit all Cash Collateral in his possession or control that is in excess of the Specified Carveout Amount[4] to Agent for Agent's final application.

      ii. <u>Monthly Reporting and Reconciliation</u>. On or before the tenth day of each calendar month after approval of the Agreement, and within three business days after the Termination Date (as defined below), the Trustee will (A) provide to Agent a written report of (i) all actual collections and disbursements for the preceding month (or through the Termination Date)

---

[4] "<u>Specified Carveout Amount</u>" means, as of any date of determination, with respect to each Debtor, an amount equal to the actual and documented Carveout expenses provided for above that are accrued through such date; <u>provided</u>, <u>however</u>, that the Specified Carveout Amount shall be subject to downward adjustment to the extent that any such Carveout expenses are not approved and allowed by the Court.

and (ii) all Carveout (as defined below) expenses (both allowed and asserted) accrued as of the end of the preceding month (or the Termination Date) and (B) remit all Cash Collateral in the Trustee's possession or control that is in excess of the Specified Carveout Amount to Agent.

    iii. <u>Specified Accounts</u>. All Cash Collateral that the Trustee is authorized to retain under the Agreement will at all times be maintained on deposit in deposit account number ending –0151, maintained in the name of the Trustee at Pinnacle Bank (the "<u>Specified Account</u>"), subject to the terms and conditions of the Agreement.

    iv. <u>Account Debtors</u>. Without further order of the Court, the Trustee will, and Agent may directly, notify in writing all account debtors of existing and future accounts receivable of the Debtors and instruct all such account debtors to make payments directly into the Specified Account.

    v. <u>Cash Collateral in Agent's or any Lender's Possession</u>. Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into the possession or control of Agent or any Lender which constitute Prepetition Collateral or proceeds of Prepetition Collateral.

c. <u>Carveout Terms</u>.

    i. <u>Carveout</u>. Agent, on behalf of itself and the Lenders, agrees to provide a carveout from the proceeds of Prepetition Collateral that the Trustee may collect or liquidate until the Termination Date in order to enable the Trustee to pay the following obligations incurred up to, and including, the Termination Date, in each case, solely to the extent constituting an allowed claim in the Cases ("<u>Carveout</u>"):

        1. Trustee's statutory commission on Cash Collateral (the "<u>Trustee Commission</u>");

        2. Reasonable fees and costs of the following professionals, in each case, to the extent specifically related to asset liquidation and subject to the approval of the Court: (i) Gellert, Scali, Busenkell & Brown, LLC ("<u>Trustee's Counsel</u>"); <u>provided</u>, <u>however</u>, that the Carveout for Trustee's Counsel shall not exceed $30,000, in the aggregate (inclusive of all three Cases), unless Agent otherwise agrees in writing; (ii) the A/R Collection Firm, subject to the terms of the A/R Collection Agreement (as such terms are defined below); and (iii) the Auctioneer, subject to the terms of the Auctioneer Agreement (as such terms are defined below);

        3. Actual reasonable out of pocket expenses of the Trustee, not to exceed $500 per month unless Agent may otherwise agree in writing at its election ("<u>Trustee Expenses</u>"); and

    4. Five percent (5%) of the Net Recoveries[5] realized from the liquidation of Prepetition Collateral in the Cases shall be paid to the holders of allowed unsecured claims in the Cases pursuant to the priorities of the Code in an aggregate amount up to, but not exceeding, $50,000 (inclusive of all three Cases); provided, that such distribution shall not exceed $50,000 in the aggregate (inclusive of all three Cases) and none of the Trustee, Trustee's Counsel, A/R Collection Firm, Auctioneer, or any other person participating in the Carveout may participate in any distribution under this subsection on account of any claim that may have arisen on or after the Petition Date; provided, further, that Agent and Lenders agree not to participate in any such distribution under this subsection on account of any deficiency claim or other unsecured claim they hold unless and until all other allowed unsecured claims in these Cases have been paid in full (the "Unsecured Creditor Distribution").

  ii. Carveout Usage. The Carveout (A) will automatically terminate on the Termination Date, (B) will be allocated among the Debtors' estates on the basis of the Debtors' ownership of the Prepetition Collateral that is liquidated or realized upon, and (C) will be payable solely from Cash Collateral retained by the Trustee in accordance with the terms of the Agreement. Nothing herein will be construed to be consent by Agent or any Lender to the allowance of any fees or expenses of any person, or will affect the right of Agent or any Lender to object to the allowance and payment of such fees, costs, or expenses, or the right of Agent to the return of any portion of the Carveout that is funded with respect to fees, costs, or expenses approved on an interim basis that are later denied on a final basis. No payment of the Carveout will constitute, or be deemed to be, a reduction of the Prepetition Debt. No portion of the Carveout may be used in connection with any claims or causes of action adverse (or which claim any interest adverse) to Agent or any Lender or any of their respective rights relating to the Prepetition Collateral or the Prepetition Documents.

d. Termination of Right to Use Cash Collateral.

  i. Termination. Unless extended by the Court with the written agreement of Agent, the Agreement and the Trustee's authorization to use Cash Collateral pursuant thereto will immediately terminate on the Termination Date without further notice or order of the Court. During the pendency of any motion filed by Agent alleging lack of adequate protection of its interests in the Prepetition Collateral, Agent shall not have any obligation to consent to the use of Cash Collateral.

---

[5] "Net Recoveries" means the gross cash proceeds realized in connection with the liquidation of Prepetition Collateral in the Cases less all Collection Expenses.

"Collection Expenses" means all of the fees, costs, expenses, and commissions incurred in connection with the collection or liquidation of Prepetition Collateral required for any particular asset, including all Carveout obligations paid or payable pursuant to the above.

  ii. <u>Termination Date</u>. At Agent's election, the earliest of (the "<u>Termination Date</u>"): (A) the date on which Agent provides written notice to the Trustee of the occurrence of an Event of Default (defined below), pursuant to which notice Agent has elected to declare the occurrence of the Termination Date; (B) if the Agreement is modified in a manner unacceptable to Agent, the date of such modification; (C) the Trustee's written notice of his election to terminate the Agreement; (D) the date on which all, or substantially all, of the Debtors' assets have been sold, abandoned, or otherwise disposed of; (E) the date that Agent and the Trustee may mutually agree in writing to terminate the Agreement; or (F) December 18, 2019, at 5:00 p.m. (Eastern Time) (as may be extended from time to time by written agreement (including email) of the Trustee and Agent).

  iii. <u>Rights Upon the Termination Date</u>. On the Termination Date, the Trustee's authorization to use Cash Collateral pursuant to the Agreement will immediately terminate. Upon the Termination Date, without further notice or order of the Court, at Agent's election: (A) the Prepetition Debt will be immediately due and payable; (B) Agent will be entitled to apply or set off any cash in Agent's or any Lender's possession or control to the Prepetition Debt on a final basis, until such Prepetition Debt is indefeasibly and finally paid in full; and (C) the Trustee will be prohibited from using any Cash Collateral for any purpose other than (i) first, to pay the Carveout, subject to the terms of the Agreement, and (ii) second, remittance to Agent for final application to the Prepetition Debt, until such Prepetition Debt is indefeasibly and finally paid in full. Upon the Termination Date, at Agent's election and upon not less than five business days' written notice to the Trustee: (x) without further order of the Court, Agent and Lenders shall have automatic and immediate relief from the automatic stay with respect to the Prepetition Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and will be entitled to exercise all rights and remedies available to them under the Prepetition Documents, the Code, and applicable non-bankruptcy law with respect to the Prepetition Collateral; and (y) the Trustee will surrender the Prepetition Collateral to Agent and otherwise assist and cooperate with Agent and Lenders in the exercise of the rights and remedies available to Agent and Lenders under the Prepetition Documents, the Code, and applicable non-bankruptcy law with respect to the Prepetition Collateral (<u>provided</u>, <u>however</u>, that during the three business day period following the Termination Date, (x) any party in interest shall have the right to oppose the relief sought by Agent pursuant to this sentence and to contest the occurrence of any Event of Default and (y) the Trustee may not use Cash Collateral unless such use is agreed to in writing by Agent).

  iv. <u>Event of Default</u>. At Agent's election, any one or more of the following (each, an "<u>Event of Default</u>"): (A) the Trustee fails to timely perform any of his obligations in strict accordance with the terms of the Agreement; (B) the Trustee, without the consent of Agent, uses, or seeks the use of, Cash Collateral other than in accordance with the terms of the Agreement;

(C) the Trustee, without the consent of Agent, files a motion to incur debt secured by a lien with priority equal to or superior to the Prepetition Liens or which is given superpriority administrative expense status under Code § 364(c) other than in accordance with the terms of the Agreement; (D) the Trustee files a motion to conduct a Code § 363 sale of all or part of the Prepetition Collateral on terms unacceptable to Agent; (E) entry of any order authorizing any party in interest to reclaim any of the Prepetition Collateral, granting any party in interest relief from the automatic stay with respect to the Prepetition Collateral, or requiring that the Trustee turnover any of the Prepetition Collateral, in each case prior to full, final and indefeasible repayment of all Prepetition Debt; (F) entry of any order requiring the Trustee to pay (prior to full, final and indefeasible repayment of all Prepetition Debt) any amounts in respect of claims under Code § 503(b)(9) or otherwise on account of goods shipped to Debtor prior to the Petition Date; (G) any material representation or warranty made by the Trustee in any certificate, report or financial statement delivered to Agent or any Lender proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (H) commencement of any adversary proceeding or contested matter objecting to the extent, validity, perfection, amount, enforceability, or priority of the Prepetition Documents, the Prepetition Debt or the Prepetition Liens or asserting any claim or cause of action against Agent or any Lender; (I) the Agreement is modified, amended, vacated, or stayed in any manner not consented to in writing by Agent; (J) if, at any time, (i) the terms of the engagement agreement of either the A/R Collection Firm or the Auctioneer (or both) are modified in any manner that is not acceptable to Agent or (ii) the A/R Collection Firm or the Auctioneer (or both) resigns, is suspended, or is terminated or instructed to cease working at any time prior to the Termination Date and is not thereafter replaced by another A/R Collection Firm or Auctioneer (as applicable) acceptable to Agent, on terms acceptable to Agent, within five business days after the date on which such A/R Collection Firm or Auctioneer (as applicable) resigns, is suspended, or is terminated or instructed to cease working; or (K) the Trustee breaches any of the Sale/Collection Covenants.

e. <u>Postpetition Debt</u>: Any advance of funds that the Trustee may request from Agent or any Lender from time to time in these Cases, including, without limitation, in connection with the sale or other disposition of any Prepetition Collateral, shall in each case constitute debt advanced by Agent or such Lender under and pursuant to Code § 364(d).

f. <u>Adequate Protection of Interests of Agent and Lenders in the Prepetition Collateral</u>. Effective upon the Court's approval of the Agreement, as adequate protection of the interests of Agent and Lenders in the Prepetition Collateral and the Prepetition Liens for the use of Cash Collateral and any decline in the value of the Prepetition Collateral in accordance with Code §§ 361 and 363:

i. <u>Priority of the Prepetition Liens and Allowance of Agent's and Lenders' Prepetition Claims</u>. Effective upon the Court's approval of the Agreement: (A) the Prepetition Liens constitute First Priority Liens, subject only to any Permitted Liens, and secure the payment and performance of the Prepetition Debt; (B) the Prepetition Debt constitutes the legal, valid, and binding obligation of the Debtor, enforceable in accordance with the terms of the Prepetition Documents; and (C) the claim of Agent and each Lender with respect to the Prepetition Debt constitutes an allowed claim in each Case in an amount not less than $28,957,794.02, exclusive of any accrued and accruing amounts allowable under Code § 506(b).

ii. <u>Allowed Code § 507(b) Claim</u>.  If and to the extent the adequate protection of the interests of Agent and Lenders in the Prepetition Collateral granted to Agent and Lenders pursuant to the Agreement proves insufficient, Agent and Lenders shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over: (A) all costs and expenses of administration of the Case that are incurred under any provision of the Code, including Code §§ 503(b), 506(c), 507(a), or 552(b); and (B) the claims of any other party in interest under Code § 507(b).

iii. <u>Agent's Application of Cash Collateral</u>. Agent is authorized to apply all Cash Collateral now or hereafter coming into Agent's or any Lender's possession or control to the Prepetition Debt in accordance with the Prepetition Documents until all Prepetition Debt is paid in full in cash; <u>provided</u>, <u>however</u>, that to the extent Agent or Lenders are obligated to return or disgorge any portion of the cash or non-cash proceeds of such disposition of Prepetition Collateral, or any portion of such proceeds is otherwise rescinded or reduced for any reason, then in such event, and to the extent of such return, disgorgement, rescission or reduction, the Prepetition Debt will be automatically increased and reinstated as if no payment thereon had been made.

iv. <u>Prohibition Against Priming Liens</u>.  No order shall be entered in this case authorizing the Trustee to incur debt secured by a lien that is equal or superior to the Prepetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364 for the incurrence of such debt: (A) Agent has consented to such order; (B) there is no Prepetition Debt outstanding at the time of the entry of such an order; or (C) such credit or debt is first used to immediately pay the Prepetition Debt in full in cash.

v. <u>No Surcharge</u>. The Trustee represents that the Carveout represents a good faith estimate of all of the expenses that are reasonable and necessary for the administration of the Debtors' estates and the preservation and disposition of the Prepetition Collateral through the period for which the Agreement runs (including in connection with any and all extensions after the date hereof), and therefore includes any and all items that are potentially chargeable to Agent and Lenders under Code § 506(c).

    Therefore, in the exercise of his business judgment, the Trustee agrees that he will not seek or support any surcharge of the Prepetition Collateral for any purpose unless agreed to, in writing, by Agent and the requisite Lenders, and the Trustee, on behalf of the estate, waives, and will be deemed to have waived, any and all rights, benefits, or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, and under any other legal or equitable doctrine (including unjust enrichment) as they may relate to, or be asserted against, Agent, any Lender, or any of the Prepetition Collateral. In reliance on the foregoing, Agent has agreed to enter into the Agreement.

  vi. **No Marshaling**. None of the Agent, Lenders, or any of the Prepetition Collateral will be subject to the doctrine of marshaling.

  vii. **General Release and Validation of Prepetition Debt and Prepetition Liens**. The Trustee, on behalf of each Debtor and its estate, hereby: (A) irrevocably releases, remises, and discharges Agent and each Lender, together with each of their respective affiliates, officers, directors, and employees, and Goldberg Kohn Ltd. and Reed Smith LLP, as counsel for Oxford Finance LLC (collectively, "Related Parties"), from, and is forever barred from bringing or asserting, any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Documents, any Prepetition Collateral, any aspect of the prepetition relationship among Agent, Lenders, the Related Parties, and the Debtor, or any other acts or omissions by Agent, Lenders, or Related Parties in connection with any of the Prepetition Documents, Prepetition Collateral, or their prepetition relationship with Debtor; and (B) irrevocably waives any and all defenses (including any offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability (under Code §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 or otherwise) of the Prepetition Debt, the Prepetition Liens, the Prepetition Collateral, and the Prepetition Documents.

  viii. **Replacement Liens**. Agent is hereby granted Replacement Liens,[6] for the benefit of itself and the Lenders, as security for the complete payment of the Prepetition Debt.

g. **Miscellaneous Provisions**.

  i. **Modification of Stay**. Upon court approval of the Agreement, the automatic stay is hereby modified with respect to Agent and Lenders to the extent necessary to effectuate the provisions of the Agreement.

  ii. **Financial Information**. The Trustee is authorized to, and agrees to, deliver to Agent such financial and other information concerning the business and affairs of the Trustee and any of the Prepetition Collateral as may be

---

[6] "Replacement Liens" means First Priority Liens in and on all of the assets of Debtors of any kind, nature, or description whatsoever and all of the products and proceeds thereof, in each case, wherever located and whenever arising or acquired, subject only to any Permitted Liens.

required pursuant to the Prepetition Documents, and as Agent may reasonably request from time to time, including, on the first business day of each month through the Termination Date, (A) a written report summarizing actual collections and expenditures (broken down by expense category) for the previous month, and (B) a written report showing all accrued accounts payable as of the close of business. The Trustee is also directed to allow Agent access to Debtors' premises for the purpose of enabling Agent to inspect and audit the Prepetition Collateral and the Debtors' books and records. Such access for such purpose shall be permitted during normal business hours and upon prior notice. Any party in possession of any assets owned by Debtors' estate shall at the request of the Trustee promptly deliver such assets to the Trustee.

   iii. <u>A/R Collection Firm</u>. Trustee will retain an accounts receivable collections firm acceptable to Agent (the "<u>A/R Collection Firm</u>"), pursuant to an engagement agreement in form and substance acceptable to Agent ("<u>A/R Collection Agreement</u>"), to assist the Trustee in collecting the outstanding accounts receivable of the Debtor.

   iv. <u>Auctioneer</u>. Trustee will select, retain and engage a personal property auctioneer acceptable to Agent (the "<u>Auctioneer</u>"), pursuant to an engagement agreement in form and substance acceptable to Agent ("<u>Auctioneer Agreement</u>"), to assist the Trustee in identifying, marketing, and selling personal property of the Debtor.

   v. <u>Sale/Collection Covenants</u>. Trustee agrees to use commercially reasonable efforts to (A) collect and maximize the value of all of the Debtors' outstanding accounts and proceeds thereof, including through the Trustee's engagement of the A/R Collection Firm, and (B) assemble, market, sell, and otherwise dispose of, and maximize the value of, all of the Debtors' personal property, including through the Trustee's engagement of the Auctioneer. The Trustee covenants and agrees that none of the Trustee or any of his agents will sell, transfer, dispose of, settle, adjust, release, waive, or otherwise compromise any Prepetition Collateral (including, without limitation, any account, claim, or cause of action) with a face amount greater than $10,000, in each case without the prior written consent of Agent.

16.    The Trustee is satisfied that the Agreement is reasonable and that it would be in the best interest of the bankruptcy estate to settle any disputes with Agent pursuant to the terms in the Agreement.

LEGAL ANALYSIS

17.    Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution

of bankruptcy cases. In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). To achieve these results, Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve a compromise or settlement by a trustee after notice and a hearing.

18. In applying this rule, a bankruptcy court should approve a settlement if it is fair and equitable and is in the best interest of the estate. In re Cajun Electric Power Cooperative, Inc., 119 F.3d 349, 355 (5th Cir. 1997). To properly make this determination, a bankruptcy judge "must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. at 356. See also Martin, 91 F.3d at 393.

19. The United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court must consider to approve a settlement. Specifically, the bankruptcy court must examine: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. Martin, 91 F.3d at 393.

20. In addition to these criteria, courts have scrutinized additional factors. These additional factors include: (1) the competency and experience of counsel who support the settlement; (2) the relative benefits to be received by individuals or groups within the class, (3) the nature and breadth of releases to be obtained by the parties to the settlement; and (4) the extent to which the settlement is the product of arm's length bargaining. In re 47-49 Charles Street, Inc., 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Spielfo Gel, 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); In re Dow Coming Corp., 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

21. The Trustee submits the standards articulated above have been met. The Agreement contemplated herein resolves Agent's and the Lenders' secured claim against the estate. The Agreement allows for the preservation of the remainder of funds in the estate in

addition to funds due and owing to the estate, without the added administrative costs associated with Agent's continued active participation in this bankruptcy case.

22. For the reasons set forth herein, the Trustee respectfully requests that the Court issue an Order pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 approving the Agreement in the form annexed hereto as <u>Exhibit A</u>.

WHEREFORE, the Trustee respectfully requests the entry of an Order, in the form attached hereto, and granting such other and further relief as is just and equitable.

Dated: 10/22/2019 **GELLERT SCALI BUSENKELL & BROWN, LLC**

By: */s/ Holly S. Miller*
Gary F. Seitz, Esquire
Holly S. Miller, Esquire
1628 John F. Kennedy Blvd, Suite 1901
8 Penn Center
Philadelphia, PA 19103
Telephone: (215) 238-0010
Facsimile: (215) 238-0016
Email: gseitz@gsbblaw.com
   hsmiller@gsbblaw.com

Counsel to the Chapter 7 Trustee

**GOLDBERG KOHN, LTD**

By: */s/ Zachary J. Garrett*
Zachary J. Garrett, Esquire
55 East Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 863-7149
Facsimile: (312) 863-7449
Email: zachary.garrett@goldbergkohn.com

-and-

Claudia Z. Springer
REED SMITH LLP
Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, PA 19103
Tel: (215) 851-8100
cspringer@reedsmith.com

Counsel to Agent